## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILLIP RISHEL, | |
| *Plaintiff,* | Civil Action No.: _____ |
| v. | **COMPLAINT FOR CIVIL RIGHTS VIOLATIONS** |
| CITY OF ALLENTOWN, a political subdivision of the Commonwealth of Pennsylvania; | **JURY TRIAL DEMANDED** |
| DEAN FLYTE, a retired police officer of the Allentown Police Department, in his individual capacity; and | |
| CHRISTOPHER STEPHENSON, a sergeant of the Allentown Police Department, in his individual capacity, | |
| *Defendants.* | |

ZACHARY T. SILVER*
   DC Bar No. 1742271
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
zach.silver@thefire.org


* *Pro Hac Vice* Motions Forthcoming

COLIN P. MCDONELL
   PA Bar No. 331247
JAMES C. GRANT*
   WA Bar No. 14358
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
P.O. Box 40128
Philadelphia, PA 19106
Tel: (215) 717-3473
colin.mcdonell@thefire.org
jim.grant@thefire.org

## INTRODUCTION

1.      In recent years, Allentown Police Department (APD) officers have been involved in several incidents of abusive conduct and arrests caught on video by citizens recording police with their cell phones. In response to this scrutiny, APD officers have harassed and sought to prevent citizens from filming them. These tactics violate clearly established constitutional rights of citizens to film, publicize, and criticize police activities.

2.      Specifically, it is well settled in this Circuit that the First Amendment protects the "right to record—photograph, film, or audio record—police officers conducting official police activity in public areas," as it can capture information that "leads to citizen discourse on public issues, 'the highest rung of the hierarchy of First Amendment values.'" *Fields v. City of Philadelphia*, 862 F.3d 353, 359–60 (3d Cir. 2017) (quoting *Snyder v. Phelps*, 562 U.S. 443, 452 (2011)).

3.      To bring public attention to the APD's conduct and to protest its actions, Plaintiff Phillip Rishel films Allentown police officers in public spaces. This has tended to draw their ire and retribution.

4.      On March 26, 2024, when Rishel was filming from a public sidewalk outside an APD precinct, Defendant Officer Dean Flyte took offense, got his patrol car from the adjacent parking garage, and drove it out of the garage and *onto the public sidewalk*, aiming it directly at Rishel. Rishel ran from the cruiser bearing down on him, escaping injury by positioning himself behind a concrete planter. Officer Flyte threatened to arrest and charge Rishel for filming and criticizing him.

Shortly afterward, Defendant Sergeant Christopher Stephenson joined Flyte and purported to ban Rishel from the public sidewalk under threat of arrest.

5.    When Rishel returned the next day, Sergeant Stephenson threatened Rishel with arrest and criminal charges and said he would contact mental health authorities about Rishel. Stephenson asserted that Rishel had no First Amendment right to film police activities, that observing and filming police from a public sidewalk could not be a protest, and that the police could ban Rishel and bring criminal charges against him for being on the public sidewalk. Sergeant Stephenson's assertions were not only plainly wrong, but in conflict with well-established First Amendment rights and protections.

6.    Sergeant Stephenson persisted with his disregard of Rishel's First Amendment rights by filing a criminal complaint against him for his peaceful and non-disruptive filming on March 27, 2024, charging him with disorderly conduct and loitering.

7.    But the First Amendment not only protects a citizen's right to film police activity in public; it likewise protects "verbal criticism and challenge directed at police officers," *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), even—and especially—when it uses "disputatious, emotionally charged, or profane" language, *Johnson v. Campbell*, 332 F.3d 199, 212–13 (3d Cir. 2003).

8.    By assaulting and threatening to arrest and charge Rishel, Officer Flyte violated Rishel's clearly established First Amendment rights. As did Sergeant

Stephenson by purporting to ban Rishel from the public sidewalk and by bringing criminal charges against him.

9.    And the City of Allentown is liable for Officer Flyte's and Sergeant Stephenson's actions because, although it is obvious its officers will encounter citizens who record police activities or criticize the police in public spaces, the City and APD have no program for training police officers about respecting and protecting citizens' First Amendment rights. The City and APD have instead enabled a pattern of Allentown police officers retaliating against citizens who film and critique police conduct.

10.    Rishel therefore brings this action to vindicate his and the public's constitutional rights to record and criticize police.

## JURISDICTION AND VENUE

11.    This action arises under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12.    This Court has original jurisdiction over Rishel's federal claims under 28 U.S.C. §§ 1331 and 1343.

13.    This Court has supplemental jurisdiction over Rishel's claim under Pennsylvania law pursuant to 28 U.S.C. § 1367.

14.    This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 because this case presents an actual case or controversy within the Court's jurisdiction.

3

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all parties reside in this district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Rishel's claims occurred in this district.

## THE PARTIES

*Plaintiff*

16.     Plaintiff Phillip Rishel resides in Allentown, Pennsylvania. Rishel protests Allentown police misconduct by using his cell phone to non-disruptively film police activity in public settings. This has included recording the actions of APD officers engaged in official activity.

*Defendants*

17.     Defendant City of Allentown is a municipal corporation within the Commonwealth of Pennsylvania. The City is empowered to establish, regulate, and control the Allentown Police Department for the enforcement of laws and ordinances within its jurisdiction, including by providing or requiring training for Police Department personnel. The City is subject to liability under 42 U.S.C. § 1983.

18.     Defendant Dean Flyte is a resident of Pennsylvania and was a police officer employed by the Allentown Police Department until he retired in 2024 (after the events described in this Complaint). At all times relevant here, Officer Flyte acted under color of state law. He is sued in his individual capacity.

19.     Defendant Christopher Stephenson is a resident of Pennsylvania and a police sergeant employed by the Allentown Police Department. At all times relevant

here, Sergeant Stephenson acted under color of state law. He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

### *Allentown police officers have often been filmed violating citizens' constitutional rights.*

20.    As smartphones have become ubiquitous, members of the public increasingly have used their phones to film law enforcement activity, providing an important check against police brutality and misconduct. The City of Allentown is well aware of this trend: The actions of APD officers have been the subject of numerous citizen videos, lawsuits, and settlement payouts.

21.    In May 2014, a bystander used a cell phone to film APD officers who, during a routine traffic stop, removed Cristhian Ramirez from his car, threw him to the ground, and kneed, punched, and handcuffed him, before charging him with disorderly conduct. The City settled Ramirez's civil rights lawsuit for $25,000. *See Ramirez v. Wilcox*, No. 5:14-cv-05461 (E.D. Pa. dismissed Sept. 4, 2015).

22.    In October 2014, an Allentown police officer allegedly smashed Eli Heckman's cell phone and arrested and charged him with disorderly conduct for filming an officer conducting a violent arrest. The City settled Heckman's First and Fourth Amendment claims, among others, for $45,000. *See Heckman v. Ammary*, No. 5:15-cv-04184 (E.D. Pa. dismissed May 16, 2016).

23.    In May 2015, as Hector Medina-Pena was complying with an order to lay on all fours during a vehicle stop, APD Officer (now Sergeant) Joseph Iannetta kicked his booted foot into the side of Medina-Pena's head and face. After dashcam

footage of the incident made national headlines, the City settled Medina-Pena's civil rights lawsuit for $160,000. *See Medina-Pena v. Iannetta*, No. 5:16-cv-05495 (E.D. Pa. dismissed May 26, 2017).

24.     Iannetta was also sued over a 2013 incident in which he allegedly stomped and kicked Angel Guerrido-Lopez, falsified police reports to charge him with resisting arrest, and delivered false testimony at his criminal trial. The City settled Guerrido-Lopez's lawsuit for $350,000. *See Guerrido-Lopez v. Howells*, No. 5:15-cv-01660 (E.D. Pa. dismissed July 25, 2016).

25.     In September 2018, Allentown police officers brutally beat John Perez for criticizing how they were treating his neighbors, charged him with resisting arrest and disorderly conduct, and allegedly gave false testimony at his criminal trial. According to Perez's civil rights complaint, officers at the scene used their flashlights to prevent bystanders from filming the attack, and the Allentown Police Department conducted a sham investigation to cover it up; but a nearby home security system captured video footage of the incident. The City settled Perez's lawsuit for $400,000, then the City's second largest settlement since 2011. *See Perez v. Lebron*, No. 5:20-cv-04331 (E.D. Pa. dismissed Nov. 17, 2021).

26.     In the summer of 2020, while Allentown residents and communities across the country protested police brutality in the wake of George Floyd's murder, a bystander used her cell phone to film an Allentown police officer kneeling on a man's neck to restrain him. *See* Sara K. Satullo, *Allentown Police Investigating Video of Officer with Knee on Man's Neck*, Lehigh Valley Live (Feb. 22, 2023),

https://www.lehighvalleylive.com/news/2020/07/allentown-police-investigating-video-of-officer-with-knee-on-mans-neck.html [https://perma.cc/F4ZW-9A74].

27.     In July 2021, Allentown police officers charged Muhamad Awadallah with disorderly conduct for non-intrusively filming the scene of a significant motor vehicle collision and commenting on police officers and others at the crash scene.

28.     All told, since 2015, the City has paid at least $2 million related to claims of police misconduct, including many instances where police activity came to light because citizen-witnesses recorded it.

29.     Despite this pattern of misconduct and series of settlements, on information and belief, since at least 2014, the City has not provided or required *any* training for police officers about citizens' First Amendment rights and protections to observe, protest, record, and criticize police activities. A public-records request filed in 2025 under Pennsylvania's Right-to-Know-Law for all First Amendment–related training materials since 2014 received a response from the APD that no responsive records exist.

### *Plaintiff Phillip Rishel draws the APD's ire and retribution for filming.*

30.     The many instances of Allentown police misconduct have concerned and disturbed Plaintiff Phillip Rishel. He decided to take action to protest the APD's disregard of constitutional rights and advocate for police accountability.

31.     To do so, Rishel went to APD precincts to observe and record police officers using his cell phone, always from public sidewalks and without hindering police activities in any way. Rishel sought to witness and film police officers to underscore that their actions were being observed, recorded, and scrutinized.

32.    Several Allentown police officers have lashed out at Rishel for video recording them. Officers have shined spotlights in his eyes, blared sirens at him, and attempted to intimidate him by shouting out his home address.

33.    On February 21, 2024, Rishel was filming what he could see in plain view while standing on a public sidewalk outside APD Headquarters in the City Hall complex, including through open grating into the adjacent parking garage. Rishel did not interfere with any police activity, enter the parking garage, or impede pedestrian traffic on the sidewalk or vehicle traffic into or out of the garage at any time.

34.    Nonetheless, APD Captain of Patrol Daniel Gross came out of the building, accused Rishel of loitering, ordered him to stop filming and leave the area, and denied that Rishel had a First Amendment right to film from the public sidewalk.

35.    Captain Gross repeatedly used his body to block Rishel from filming into the adjacent parking garage and placed his hands on Rishel to guide Rishel away from APD Headquarters.

36.    After Rishel left, Captain Gross reported him to the Lehigh County Department of Human Services as having had a mental health crisis.

37.    The same day, Rishel filed a complaint with the APD against Captain Gross for interfering with his First Amendment right to film police activity from the public sidewalk outside APD Headquarters. The APD dismissed Rishel's complaint without contacting him to follow up or to obtain a copy of his video footage.

***Officer Flyte chases Rishel with a patrol car down a public sidewalk for filming and criticizing him.***

38.   On March 26, 2024, Rishel visited the APD precinct at 1001 Hamilton Street. He filmed what he could see in plain view while standing on the public sidewalk on the west side of 10th Street between Hamilton and Court Streets, including through open grating into the adjacent parking garage. Rishel did not interfere with any police activity, enter the parking garage, or impede pedestrian traffic on the sidewalk or vehicle traffic into or out of the parking garage at any time.

39.   Approximately 15 minutes after Rishel arrived, Defendant Officer Dean Flyte silently approached him on foot and stopped and stared at a nearby "No Trespassing" sign next to the parking garage entrance:



40.   As Officer Flyte looked at the sign, Rishel said, "Yeah, that's a nice sign. Too bad it doesn't apply to the public sidewalk."

41.    Officer Flyte said nothing and retreated into the parking garage,
walking up a vehicle ramp. Rishel called out at Officer Flyte about *his* disregard of
a nearby sign that read "PEDESTRIANS MUST USE STAIRS ONLY."

42.    Approximately 10 minutes later, Officer Flyte quickly drove a patrol
car out of the garage, turning the car sharply to drive onto the public sidewalk
where Rishel was standing, all the while blaring the car's siren. Officer Flyte
misjudged the turn, however, and the patrol car hit the sidewall of the garage
entrance:



43.    Rishel laughed and ridiculed Officer Flyte. But he stopped laughing—
and started running—when Officer Flyte backed the car up, completed the turn,
and drove *on the sidewalk* straight at Rishel.

44.    When a light pole got in Officer Flyte's way, he drove around it and back onto the sidewalk:



45.    Rishel was forced to position himself behind a concrete planter to escape Officer Flyte's pursuit:



46.    After Officer Flyte came to a stop, Rishel moved to the public sidewalk on the northwest corner of 10th and Court Streets, behind the patrol car. Officer Flyte exited the car and entered the precinct through a nearby door, reemerging a short time later with Defendant Sergeant Christopher Stephenson.

11

47.     As Sergeant Stephenson inspected the patrol car for damage, Officer Flyte said he would arrest Rishel for loitering if "I catch you around here again." In response to Rishel's assertions that the First Amendment protected his filming and criticism, Officer Flyte threatened that Rishel was "about to learn the law."

**Sergeant Stephenson threatens and purports to ban Rishel from the public sidewalk for exercising his constitutional rights.**

48.     Shortly after Officer Flyte assaulted Rishel with the patrol car, other officers came out of the precinct and joined Sergeant Stephenson and Officer Flyte in confronting Rishel. As Rishel was complaining about Flyte's actions, the other officers defended what Flyte had done, blaming Rishel for somehow blocking the parking garage entrance while filming. The officers' assertions were false, as Rishel's video recording reflects and confirms.

49.     When Rishel objected that he had not blocked the garage entrance and asserted his rights to protest and film the police from the public sidewalk, Sergeant Stephenson purported to ban him from the sidewalk under threat of arrest.

50.     In the exchange between Rishel and the officers after Officer Flyte assaulted Rishel with the patrol car, Rishel said, "You guys are fucking nuts. I thought the people at the main station were crazy. You guys—I come here one time and you're running me off the sidewalk? You guys are nuts." Sergeant Stephenson replied that Rishel's "antics are well known" and insisted the First Amendment did not give him rights to voice his grievances or film police activities.

51.     Sergeant Stephenson then ordered Rishel to leave and twice more threatened to arrest Rishel if he filmed police activity from the public sidewalk.

52.     By this point, four other officers had emerged from the precinct and stood behind Sergeant Stephenson:



53.     Rishel continued trying to explain his First Amendment rights to observe and record police activity. Lieutenant Matt Karnish, who commands the Second Platoon and is Sergeant Stephenson's direct supervisor, told Rishel to "stop trying to goad shit" and that Stephenson's ban was "the end of the conversation." Stephenson responded that "one person ain't a protest" and ordered Rishel to leave. In light of the officers' threats, Rishel left.

54.     Later that day, Rishel tried to file a formal complaint against Officer Flyte at the City Hall APD Headquarters, but the desk officer refused to give him a complaint form. The officer told Rishel a supervisor would contact him, but no one from the APD ever did.

***Sergeants Iannetta and Stephenson harass, threaten, and criminally charge Rishel for filming and criticizing Allentown police.***

55.     The next day, March 27, 2024, Rishel returned to the Hamilton Street precinct and picked up where he left off, using his cell phone to film what he could

see in plain view while standing on the public sidewalk on the west side of 10th
Street. Rishel did not interfere with any police activity, enter the parking garage, or
impede pedestrian traffic on the sidewalk or vehicle traffic into or out of the parking
garage at any time. Rishel filmed the entire time he was protesting that day at the
Hamilton Street precinct.

56.    Shortly after Rishel arrived, Sergeant Iannetta approached him from
inside the parking garage and spoke to him through the open grating. Iannetta
berated and tried to intimidate Rishel for filming and criticizing Allentown police.

57.    Sergeant Iannetta told Rishel he should "be institutionalized" and
asked Rishel how many times he had been "institutionalized." When Rishel
responded that he had never been hospitalized or "institutionalized" for mental
health treatment, Sergeant Iannetta responded intimidatingly: "Zero? Are you sure?
Because remember, we know all about you. You want to know all about us, but we
know all about you."

58.    Like Rishel's encounter with APD officers the day before, the exchange
between Rishel and Sergeant Iannetta became more heated. When Rishel insulted
Iannetta, Iannetta responded that "bad things would happen to" Rishel if he ever
said anything of the sort when Iannetta was "out of [his] uniform." When Rishel
explained he was filming Allentown police activities to hold "bad cops like Dean
Flyte" accountable, Iannetta asserted again, "You need to be institutionalized."

59.    Approximately 30 minutes after Rishel's interaction with Sergeant
Iannetta, Sergeant Stephenson approached him and said he was going to cite Rishel

"because I warned you yesterday not to come back and do this shit." Like the day before, Rishel repeatedly asserted his First Amendment rights to protest and film police. Stephenson insisted Rishel's actions "serve[d] no legitimate purpose" and incorrectly claimed—three times—that "filming is not a First Amendment right." Sergeant Stephenson again threatened to arrest Rishel for being on the sidewalk and filming police activities after Stephenson's purported ban and because of Rishel's use of curse words toward officers the day before.

60.     Sergeant Stephenson called Rishel a "moron," "stupid," "crazy," and "pathetic," while saying that calling police officers names is "illegal" and "the very definition of disorderly conduct." Stephenson then ordered Rishel to leave "because of [his] behavior." In light of the threats from Sergeants Iannetta and Stephenson, Rishel left.

61.     The following day, March 28, 2024, Sergeant Stephenson filed criminal charges against Rishel via mailed citation, asserting two counts of disorderly conduct under 18 Pa. Cons. Stat. § 5003(a)(3) and Allentown, Pa., Code § 244-1, and one count of loitering under Allentown, Pa., Code § 244-4.

**_Officer Flyte again threatens to arrest Rishel for filming._**

62.     On June 7, 2024, Rishel returned to APD Headquarters and resumed taking video. As before, he did not interfere with police activity, enter the parking garage, or impede pedestrian or vehicle traffic.

63.     When Rishel concentrated his filming on Officer Flyte, Flyte threatened to arrest Rishel for trespassing, though Rishel was on the public

sidewalk. Officer Flyte ordered Rishel to "move along." When Rishel stood his ground, Flyte said, "All right, no problem," and turned and walked into APD Headquarters, giving the impression that he and/or others would return to take further action against Rishel. Rishel left because of concerns the police would assault or charge him, as they had threatened and done before.

***Sergeant Stephenson demands Rishel stop filming and criticizing Allentown police in exchange for dropping the criminal case.***

64.    On June 17, 2024, Sergeant Stephenson prosecuted the charges and testified as the complaining witness before the Lehigh County Magisterial District Court at the preliminary hearing and summary trial on the criminal citation he had filed against Rishel on March 28, 2024.

65.    Sergeant Stephenson testified that he charged Rishel with disorderly conduct and loitering for his actions on March 27, 2024. Specifically, Stephenson said he charged Rishel with disorderly conduct for "verbally abusing, harassing, and screaming obscenities on the public street," and with loitering for "blocking the sidewalk" and obstructing officers from entering or exiting the parking garage.

66.    On multiple material issues, Sergeant Stephenson's testimony was false. For example, Stephenson testified that on March 27, 2024, he personally witnessed Rishel block the parking garage entrance, impede pedestrian traffic on the public sidewalk next to the parking garage, and obstruct ongoing construction by remaining on a closed sidewalk. However, Rishel's video footage, which captured the entirety of Rishel's March 27 protest at the Hamilton Street precinct (but was not introduced into evidence at this hearing), shows none of those things happened.

67.     The court dismissed the disorderly conduct charges, noting statements and gestures like "fuck yourself or the middle finger" have long been recognized as constitutionally protected and impermissible bases to assess criminal penalties for disorderly conduct.

68.     Before addressing the loitering charge against Rishel, the court gave Sergeant Stephenson an opportunity to dismiss the charge voluntarily. Stephenson said he would do so only if Rishel agreed to stop filming and criticizing Allentown police. Rishel refused, so Sergeant Stephenson declined to drop the charge.

69.     The court found Rishel guilty of loitering based on Sergeant Stephenson's sworn testimony. However, on summary appeal the Court of Common Pleas entered a verdict of not guilty, disposing of the last of Sergeant Stephenson's charges against Rishel, all of which were ultimately decided favorably to Rishel.

***The APD fails to act on Rishel's complaints about Officer Flyte and Sergeant Stephenson.***

70.     Rishel provided his cell phone video to Lackluster Media, which posted a video on its YouTube channel on February 10, 2025, entitled *Triggered Tyrants Try Every Trick – Lawsuit Incoming.*[1] The video analyzed and critically commented on Officer Flyte's, Sergeant Iannetta's, and Sergeant Stephenson's actions on March 26 and 27, 2024, and garnered more than a million views.

---

[1] LackLuster (@LackLusterMedia), *Triggered Tyrants Try Every Trick – Lawsuit Incoming* (YouTube, Feb. 10, 2015), https://www.youtube.com/watch?v= KQW_bAe2_gM.

71.     Also in February 2025, Rishel filed formal complaints with the APD against Officer Flyte and Sergeant Stephenson for their actions on March 26 and 27, 2024. Rishel also filed a formal complaint against Stephenson for his false testimony.

72.     APD Assistant Chief of Police Support Services James Gress (who oversees the APD's Office of Personnel Standards and is responsible for APD training), contacted Rishel to discuss his complaints against Officer Flyte and Sergeant Stephenson. Rishel met with Assistant Chief Gress and Captain of Administration Kyle Pammer at APD Headquarters. Gress and Pammer told Rishel they had seen the *Triggered Tyrants* video and asked for copies of Rishel's cell phone videos, which he provided. Gress and Pammer stated the APD could not investigate or hold Officer Flyte accountable because he had retired.

73.     In the five months since Rishel's complaints, on information and belief, the APD has taken no action to address them—the APD has not informed Rishel of any such action, nor is Rishel aware of any. At the same time, on information and belief, the APD has done nothing to provide or require officer training about respecting citizens' First Amendment rights to observe, film, and criticize police conduct.

74.     Fearing further retaliation, threats, arrest, charges, or assaults by APD officers, Rishel has refrained from observing and filming police activities. But for this fear, Rishel would continue observing and filming public police activities in protest of APD misconduct.

75.     Rishel suffered mental anguish and emotional distress from Officer Flyte assaulting him with a police cruiser.

76.     Rishel suffered and continues to suffer injury from the APD's restrictions and efforts to preclude him from exercising his First Amendment rights, including emotional distress from APD officers' threats.

77.     Rishel's injuries are a direct and proximate result of the APD officers' actions, of the City's failure to train APD officers about citizens' First Amendment rights to film and criticize police officers, and of the APD's failures to hold officers accountable for infringing or disregarding these rights.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### First Amendment Violations
### (Against Defendants Flyte and Stephenson, in their individual capacities)

78.     Plaintiff re-alleges and incorporates paragraphs 1 through 77 as though fully set forth herein.

79.     Rishel's observing and filming police activities in plain view from a public sidewalk are fully protected under the First Amendment. *Fields*, 862 F.3d at 356.

80.     A public sidewalk is a traditional public forum where citizens like Rishel are entitled to speak, protest, and express their views about issues of public concern, such as police activities and misconduct. *See Boos v. Barry*, 485 U.S. 312, 318 (1988); *see also Hill*, 482 U.S. at 461.

81.     Officer Flyte deprived Rishel of his First Amendment rights to record public police activity and speak in a traditional public forum by driving a vehicle at Rishel and threatening to arrest him for his non-disruptive observation, filming, and verbal criticism of police officers. Assaulting and threatening a citizen is obviously and patently an improper response to the citizen exercising his First Amendment rights to observe, film, and protest police conduct.

82.     Further, Sergeant Stephenson deprived Rishel of his First Amendment rights to record public police activity and speak in a traditional public forum by threatening him with arrest, criminal charges, and mental-health institutional-ization; purporting to ban him from the sidewalk; bringing criminal charges against him; and giving inaccurate testimony to obtain a conviction for his non-disruptive observation, filming, and verbal criticism of police officers. Threatening, excluding, charging, and giving inaccurate testimony to convict a citizen is likewise obviously and patently an improper response to the citizen exercising his First Amendment rights to observe, film, and protest police conduct.

83.     Officer Flyte also retaliated against Rishel by assaulting and threatening him for exercising his First Amendment rights. So too did Sergeant Stephenson by threatening, charging, and giving inaccurate testimony to convict Rishel for exercising his First Amendment rights. Officer Flyte and Sergeant Stephenson were personally opposed to Rishel filming and criticizing police officers. Their opposition was the motivating factor for their actions against Rishel and their deliberate violation of Rishel's First Amendment rights.

84. Officer Flyte's and Sergeant Stephenson's actions against Rishel would be sufficient to deter a person of ordinary firmness from filming and criticizing police officers in public spaces.

85. It was clearly established at all times of Officer Flyte's and Sergeant Stephenson's actions alleged herein that the First Amendment prohibits a police officer acting under color of state law from:

    (a) Precluding or restricting a citizen from non-disruptively recording public police activity in a public place such as a public sidewalk, *Fields*, 862 F.3d at 356;

    (b) Precluding or banning a citizen from speaking in a traditional public forum such as a public sidewalk based on the content or viewpoint of the citizen's speech, *Boos*, 485 U.S. at 318;

    (c) Assaulting, using force against, or threatening bodily harm to a citizen for non-disruptively recording public police activity or speaking on a public sidewalk, *Schleig v. Borough of Nazareth*, 695 F. App'x 26, 30–31 (3d Cir. 2017);

    (d) Arresting, filing criminal charges, or threatening arrest, criminal charges, or mental-health institutionalization of a citizen for non-disruptively recording public police activity or speaking on a public sidewalk, *Falcone v. Dickstein*, 92 F.4th 193, 210 (3d Cir. 2024); and

    (e) Retaliating against a citizen for non-disruptively recording public police activity or retaliating based on the content or viewpoint of the citizen's speech on a public sidewalk, *Hartman v. Moore*, 547 U.S. 250, 256 (2006).

86. A reasonable police officer would have known that threatening, assaulting, criminally charging, and purporting to ban Rishel from recording public police activities and speaking on a public sidewalk, and retaliating against him for doing so, were obvious First Amendment violations.

87.    A reasonable police officer could not have believed there was probable cause to arrest or criminally charge Rishel or that Rishel was a danger to himself or others.

88.    Officer Flyte's and Sergeant Stephenson's actions have chilled Rishel from observing and filming police activities and have caused Rishel to suffer mental anguish and emotional distress.

89.    Rishel is entitled to monetary damages (compensatory and nominal) against Officer Flyte and Sergeant Stephenson in their individual capacities for violating his clearly established First Amendment rights.

90.    Rishel is also entitled to punitive damages against Officer Flyte and Sergeant Stephenson because their actions were willful, malicious, oppressive, and in reckless disregard of Rishel's clearly established First Amendment rights.

**SECOND CAUSE OF ACTION**
**First Amendment Violations**
**(Against Defendant City of Allentown)**

91.    Rishel re-alleges and incorporates paragraphs 1 through 90 as though fully set forth herein.

92.    Police officers have a duty to avoid restricting a citizen from exercising their First Amendment rights, including recording public police activity, or precluding, restricting, threatening, punishing, or retaliating against a citizen for speaking or protesting on a public sidewalk.

93.    Police officers will often deal with persons who criticize, insult, or curse at them in public spaces, and will often be in situations where citizens make audio-visual recordings of their activities in public.

94.    The City of Allentown has a duty to ensure APD officers are properly trained, educated, and instructed about respect for First Amendment rights.

95.    The City of Allentown is aware there has been a pattern of APD officers punishing or retaliating against citizens who record police activities in public spaces.

96.    The City knows that, in recent years, APD officers were involved in numerous violent and threatening confrontations and arrests. Indeed, in many instances, APD officers targeted individuals precisely because they were recording police officers. Citizen bystanders recorded many other incidents and made their recordings public.

97.    On information and belief, the City has not and does not provide or require any police training about respecting and protecting First Amendment rights of individuals, including not training on citizens' rights to record police activities in public spaces or to comment on, criticize, and even curse at police.

98.    The City's failure to properly educate and train police officers directly and proximately caused the violations of Rishel's First Amendment rights by APD officers.

99.    The City's lack of police training and education about clearly established First Amendment rights reflects the City's past and ongoing deliberate indifference to protecting such rights, including Rishel's rights in the incidents set forth herein.

100.    The City's failure to train police has chilled Rishel from observing and filming police activities and has caused him to suffer mental anguish and emotional distress.

101.    Rishel is entitled to monetary damages (compensatory and nominal) against the City of Allentown for its violations of his First Amendment rights.

102.    Rishel is also entitled to injunctive and declaratory relief to protect his rights to speak in a traditional public forum and to record public police activity, and to prevent further interference, restrictions, and harm to Rishel's exercise of his rights by the APD and its officers.

**THIRD CAUSE OF ACTION**
**Common Law Assault**
**(Against Defendant Officer Flyte, in his individual capacity)**

103.    Rishel re-alleges and incorporates paragraphs 1 through 102 as though fully set forth herein.

104.    Officer Flyte willfully drove a patrol car directly at Rishel on the public sidewalk and pursued him down the sidewalk with the purpose of either striking Rishel or forcing him to flee.

105.    Rishel was justifiably concerned that Officer Flyte's pursuit of him in his patrol car driving down the public sidewalk was intended to and could cause Rishel serious bodily harm.

106.    Officer Flyte had no reasonable basis or probable cause to believe that driving a patrol car at Rishel on the public sidewalk was necessary to prevent harm to other persons.

107.    Officer Flyte's actions have chilled Rishel from observing and filming police activities and have caused him to suffer mental anguish and emotional distress.

108.    Rishel is entitled to monetary damages (compensatory and nominal) against Officer Flyte for assaulting him.

109.    Rishel is also entitled to punitive damages because Officer Flyte acted willfully, maliciously, oppressively, and in reckless disregard of Rishel's rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Rishel respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.      Declare that the First Amendment protected Rishel's filming public police activity from a public sidewalk;

B.      Declare that the First Amendment protected Rishel's speech on a public sidewalk criticizing, insulting, and cursing at police officers;

C.      Declare that Officer Flyte and Sergeant Stephenson violated Rishel's First Amendment rights to speak in a traditional public forum and record public police activity;

D.      Declare that Officer Flyte assaulted Rishel and in so doing engaged in willful misconduct;

E.      Declare that by failing to provide or require police training about the First Amendment rights to speak in traditional public forums and record public

police activity, the City of Allentown was deliberately indifferent to Rishel's constitutional rights;

F.     Declare that the City's failure to educate and train police officers was and remains the moving force behind the past and ongoing deprivations of Rishel's constitutional rights;

G.     Issue an injunction prohibiting the City (including the Allentown Police Department) and its agents, officials, servants, employees, and persons acting in concert with it from restricting Rishel's non-disruptive protest activities, speech, and/or filming of public police activity on a public sidewalk or from retaliating against Rishel for such activities;

H.     Issue an injunction requiring the City to provide and require education and training of APD police officers on the First Amendment rights to speak in a traditional public forum and record public police activity and training on proper conduct to respect and protect such rights;

I.     Award Rishel compensatory and nominal damages against the City of Allentown, Officer Flyte, and Sergeant Stephenson;

J.     Award Rishel punitive damages against Officer Flyte and Sergeant Stephenson;

K.     Award reasonable attorney's fees, expenses, and litigation costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

L.     Award such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

In compliance with Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.


DATED:    July 23, 2025

Respectfully submitted,


ZACHARY T. SILVER*
   DC Bar No. 1742271
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
Tel: (215) 717-3473
zach.silver@thefire.org


\* *Pro Hac Vice* Motions Forthcoming

*s/ Colin McDonell*
COLIN P. MCDONELL
   PA Bar No. 331247
JAMES C. GRANT*
   WA Bar No. 14358
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
P.O. Box 40128
Philadelphia, PA 19106
Tel: (215) 717-3473
colin.mcdonell@thefire.org
jim.grant@thefire.org


*Counsel for Plaintiff Phillip Rishel*